IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KindHearts for Charitable  Case No. 3:08CV2400
    Humanitarian Development, Inc.,

        Plaintiff

    v.  ORDER

Timothy Geithner, et al.,

        Defendants

Plaintiff KindHearts for Charitable Humanitarian Development, Inc. [KindHearts] challenged defendants' block pending investigation [BPI] of KindHearts' assets and provisional determination, by the Office of Foreign Assets Control [OFAC] of the United States Treasury Department, that KindHearts is a Specially Designated Global Terrorist [SDGT].

On August 18, 2009, I found that in blocking KindHearts' assets, defendants violated KindHearts' constitutional and statutory rights. *KindHearts For Charitable Humanitarian Dev., Inc. v. Geithner*, 2009 WL 2514057, *7-22, *37-46, *51-55 (N.D. Ohio) [August 18 Order] [Doc. 87]. I found that, in blocking KindHearts' assets, defendants: 1) violated KindHearts' Fourth Amendment rights by failing to obtain a warrant based on probable cause; 2) violated KindHearts' Fifth

Amendment rights by relying on criteria for the BPI that are unconstitutionally vague as applied, and by failing to provide KindHearts with adequate notice and a meaningful opportunity to respond; and 3) acted arbitrarily and capriciously in restricting KindHearts' access to its own funds to pay counsel for its own defense. *Id*.

Pending is KindHearts' motion for interim relief and/or a temporary restraining order. [Doc. 91]. KindHearts asks that I restrain defendants from proceeding with the designation process pending my adjudication of what remedy, if any, is appropriate in this case.

I continue to be persuaded of the merits of and reasons for the conclusions in my August 18 Order,[1] and forthcoming briefing will address what remedies, if any, are appropriate in light of those conclusions. Briefing is scheduled to be completed by January 11, 2010. A determination of the issue of remedy is the second half of a job that, at this point, remains incomplete.

To give effect to my August 18 Order, it is necessary that I address and decide the issue of remedy. If the defendants continue to consider whether KindHearts should be designated as an SDGT, they will jeopardize my ability to exercise my jurisdiction to determine the issue of remedy, and to complete my consideration of the issues raised in the motions leading to my August 18 Order.

Under, in the alternative, the Administrative Procedure Act [APA], 5 U.S.C. § 701 *et seq*., the All Writs Act, 28 U.S.C. § 1651(a), and my equitable powers, and for the reasons below, I grant KindHearts' motion. Defendants shall be restrained temporarily from designating KindHearts as an SDGT, and from requiring KindHearts to respond to defendants in the designation process, pending my determination of what remedy shall issue because of the constitutional and statutory violations found in my August 18 Order.

---

[1] I make this statement without prejudice to further challenges by either party.

**Discussion**

KindHearts asks that I "preserve the status quo until [I] resolve[] the remedial issues left open" by my August 18 Order. [Doc. 91]. KindHearts asserts that I have power to do so under my equitable powers, the APA and 28 U.S.C. § 1331. Defendants assert that I lack authority and jurisdiction to provide injunctive relief. I consider KindHearts' motion under the APA, the All Writs Act and my equitable powers.

**1. Administrative Procedure Act**

As previously detailed in my August 18 Order, I have jurisdiction under the APA and 28 U.S.C. § 1331. *See also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971); *Abbott Labs. v. Gardner,* 387 U.S. 136, 142-43 (1967). I, as a federal court reviewing agency action, may, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury," issue "all necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

In *Sampson v. Murray*, the Supreme Court observed that Congress intended this provision to codify the "Scripps-Howard doctrine" and mirror the usage of the All Writs Act. 415 U.S. 61, 68 n.15, 72-74 (1974). That doctrine, in relevant part, provides: "It has always been held, therefore, that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Scripps-Howard Radio, Inc. v. Fed. Commc'ns Comm'n*, 316 U.S. 4, 9-10 (1942) (internal citations omitted). Courts reviewing agency action may, under 5 U.S.C. § 705, stay agency action from being completed or acted upon pending conclusion of the review process. *See, e.g.*, *Ohio* ex rel. *Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 292 (6th Cir. 1987).

3

In my August 18 Order, I began reviewing defendants' BPI of KindHearts. These proceedings are incomplete because I have not determined the appropriate remedy for defendants' constitutional violations. Because, for the reasons below, I must act to preserve my jurisdiction and prevent irreparable injury, I act properly in preserving the status quo and KindHearts' rights until my review concludes.

To determine whether a stay should be entered under § 705, I consider the same four factors as I would in the context of an injunction: 1) the likelihood that the party seeking the stay will prevail on the merits; 2) the likelihood that the moving party will be irreparably harmed absent a stay; 3) the prospect that others will be harmed if the court grants the stay; and 4) the public interest in granting the stay.[2] *Celebrezze*, *supra*, 812 F.2d at 290; *see also Parker v. U.S. Dep't of Agric.*, 879 F.2d 1362, 1367 (6th Cir.1989); *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261 (6th Cir. 1985); *Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968); *accord Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir. 1970). In performing this analysis, the Sixth Circuit has stated:

> To justify the granting of a stay, a movant need not always establish a high probability of success on the merits. Indeed, the language courts have used to describe the "success factor" has varied, and we have previously found that the variance can best be reconciled by recognizing that the four considerations are factors to be balanced and not prerequisites to be met. The probability of success that must be shown is inversely proportional to the degree of irreparable injury the plaintiffs will suffer absent an injunction. Thus, a stay may be granted with either a high probability of success and some injury or vice versa. However, we reiterate that the demonstration of a mere "possibility" of success on the merits is not sufficient, and renders the test meaningless. Ordinarily the party seeking a stay must show a strong or substantial likelihood of success. However, at a minimum the movant must show serious questions going to the merits and irreparable harm which decidedly

---

[2] In the alternative, I consider KindHearts' motion as a request for either a stay or a temporary injunction. I thus analyze these factors in that light.

outweighs any potential harm to the defendant if a [stay] is issued.

*Celebrezze*, *supra*, 812 F.2d at 290 (internal citations and quotations omitted).

### A. Likelihood of Success on the Merits[3]

A temporary injunction typically requires a showing that the movant *is likely to succeed* on the merits of the case not yet heard. *See id.* Permanent injunctions, by contrast, generally require a showing that the movant *has succeeded* on the merits. *See, e.g.*, *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Marcavage v. City of Detroit*, 2008 WL 2980040, *1 (E.D. Mich. 2008); *Eller Media Co. v. City of Cleveland*, 161 F. Supp. 2d 796, 807 (N.D. Ohio 2001). The standard for a permanent injunction is otherwise essentially the same as for a preliminary injunction. *See id.*; *see also Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) ("[W]here a plaintiff establishes a constitutional violation . . . [t]he plaintiff [is] entitled to permanent injunctive relief upon a showing of: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law.").

KindHearts here asks for solely a temporary injunction or stay, but does so in the unusual context of my already having decided the merits, but not the appropriate remedy. Because of this temporal similarity between KindHearts' request and permanent injunctions, my analysis of this element under the standard typically used for permanent injunctions is therefore appropriate.

On the constitutional and statutory violations I found in my August 18 Order, KindHearts has prevailed on the merits. *See KindHearts*, *supra*. There is therefore not merely a substantial

---

[3] Although I find that KindHearts has satisfied its likelihood of success showing, I note parenthetically that the Sixth Circuit has suggested that such a showing may not be necessary in some circumstances. *See Celebrezze*, *supra*, 812 F.2d at 290 ("To justify the granting of a stay, a movant need not always establish a high probability of success on the merits.").

likelihood that KindHearts will prevail, but a certainty because it already has prevailed. There is, moreover, a substantial likelihood that I will find some relief or remedy appropriate for the constitutional violations I found in my August 18 Order.

KindHearts has thus satisfied its likelihood on the merits showing.

### B. Irreparable Harm

A plaintiff demonstrates irreparable harm "if the [plaintiff's] claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (stating that the loss of First Amendment rights, for even a short period of time, constitutes irreparable harm); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (finding a violation of privacy constitutes irreparable harm). "[W]hen reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.), *cert. denied*, 534 U.S. 951 (2001) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Here, KindHearts' claim is based on constitutional violations, and I found several of those violations to have occurred. KindHearts, if compelled to submit to the SDGT designation process, will not have been afforded the remedy, if any, to which it is entitled based on defendants' constitutional and statutory violations. KindHearts will thus suffer irreparable harm in the designation process, commenced with the BPI, due to the insufficiency of the notice provided them before the initial BPI determination.

Defendants are requiring KindHearts to respond to allegations that I have found

constitutionally lacking. KindHearts must, as a result, effectively disprove a negative if compelled to proceed before I provide whatever remedy I determine is proper. This constitutionally inadequate notice, moreover, has severely prejudiced KindHearts' ability to respond especially in light of defendants' arbitrary and capricious denial of KindHearts' requests to pay attorneys fees with its own blocked resources. To analogize, KindHearts not only is blindfolded, but also has its hands tied behind its back.

With respect to the violation I found regarding KindHearts' ability to compensate its attorneys, defendants have at one point taken the position that KindHearts has applied for and received as much compensation from its blocked assets as is possible under the current government policy. [Doc. 73, at 63-68]. This position, however, is contrary to my August 18 Order. KindHearts, by having its counsel necessarily compelled to work without compensation or resources unconstitutionally blocked, is confronted by the risk, at least potentially, of the loss of its counsel, as well as the intervening harm of being incapable of operating or using its own resources.

KindHearts also faces irreparable injury to its reputation if injunctive relief is denied. Reputational harm may rise to the level of irreparable injury. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."); *Economou v. Physicians Weight Loss Ctrs. of Am.*, 756 F. Supp. 1024, 1039 (N.D. Ohio 1991) (noting that courts have found threats of harm to reputation and customer goodwill to constitute irreparable injury); *see also Med. Shoppe Int'l v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." (internal citations omitted)).

While these cases arose in a commercial context, the reasoning underlying these decisions applies equally to charities. Charities also depend on their reputation and "customer"–*i.e.*, donor–goodwill to continue to operate, because donors make donations much the same way typical commercial customers make purchases. Both charities and businesses rely on reputation and outreach to continue to exist, and a charity's reputation and donor goodwill are just as essential to a charity's continued functioning as a business's reputation and customer goodwill are to the business. The Sixth Circuit has also recognized, albeit in a different context, that reputational harm to a charity results in harm to the charity's operation and possibly even existence. *See U.S. v. Wiant*, 314 F.3d 826, 829 (6th Cir. 2003).

Although defendants have already denominated KindHearts as "under investigation" for possible designation as an SDGT, the damage to KindHearts' reputation and donor goodwill attending actual designation differs qualitatively from, and would be far greater than, the stigma associated with being under investigation. This is akin to the difference between recovering from being under criminal investigation and recovering from a criminal conviction. *See U.S. v. Williams*, 872 F.2d 773, 777 (6th Cir. 1989) ("[A] felony conviction irreparably damages one's reputation.").

Were defendants permitted to proceed with the designation process, KindHearts would suffer irreparable harm to its ability to operate and exist.

### C. Harm to Others

Defendants allege that "[t]he government is extremely concerned about the continuing delays in the ongoing administrative proceeding," [Doc. 96, at 25], but much of defendants' argument on this point focuses on KindHearts' complaints regarding delay. *See* Doc. 96, at 25; Doc. 104, at 5 n.1.

This argument misses the thrust of KindHearts' complaints, which, *inter alia*, target delay in receiving the notice unconstitutionally withheld from them regarding the foundation for the BPI.

Defendants, moreover, have demonstrated that time is not of the essence to them. While defendants have a legitimate interest in continuing the designation process, the matter has been before them since sometime before February 19, 2006, the date KindHearts' assets were blocked. By their arguments and actions, defendants have failed to show a pressing need for immediate continuation of the designation process.

There exists, nevertheless, the inchoate injury to defendants' authority to perform its important responsibilities and conduct its inquiries according to its own timetable without interference from the courts. Such judicial deference to the executive branch is, in general, especially appropriate in the areas of national security and foreign policy, which generally lie outside judicial competence. The manifest and continuing harm to KindHearts, however, when balanced against the intangible harm to defendants, justifies granting a temporary stay in this extraordinary and unique circumstance.

## D. Public Interest

The public clearly has a substantial stake in the government being able to perform its duties without interference. The public also, however, has a fundamental and great interest in seeing the Constitution upheld and ensuring that remedies be provided when the government has acted in derogation of constitutional rights. *See G & V Lounge v. Mich. Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979); *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987)).

**2. All Writs Act**

If the APA does not provide me authority to issue injunctive relief, I am able to do so under the All Writs Act, 28 U.S.C. § 1651(a) [the Act].

The Act provides that "[t]he Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act enables federal courts to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *U.S. v. N.Y. Tel.*, 434 U.S. 159, 172 (1977).

The Act "fill[s] the interstices of federal judicial power when those gaps threate[n] to thwart the otherwise proper exercise of federal courts' jurisdiction." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). The Act's powers are to be used "sparingly and only in the most critical and exigent circumstances." *Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (internal quotations and citations omitted).

If I act on a case within my jurisdiction,[4] "there is no doubt that [my] jurisdiction over the case includes authority to act under section 1651 when necessary to 'protect,' *Findley v. Laughead (In re Johns-Manville Corp.)*, 27 F.3d 48, 49 (2d Cir. 1994), or 'aid,' *Jones v. Lilly*, 37 F.3d 964, 967 (3d Cir. 1994), [my] jurisdiction." *Covanta Onodaga Ltd. P'ship v. Onadaga Cty. Res. Recovery Agency*, 318 F.3d 392, 396 (2d Cir. 2003).

---

[4] Contrary to defendants' assertion, I do not rely on the All Writs Act as a jurisdictional basis. I had jurisdiction over KindHearts' challenge to the BPI procedure under the APA and 28 U.S.C. § 1331. I continue to have jurisdiction over the instant case, and the pending motion, because I have not yet determined what remedy is appropriate for the constitutional and statutory violations I found in my August 18 Order. I therefore rely on the All Writs Act to protect my jurisdiction over that Order.

While a definition of what it means to "aid" jurisdiction "may be elusive, *Jones* [*v. Lilly*], 37 F.3d [964] 967 [3d Cir. 1994], it seems clear that this requirement will be satisfied only where, in the absence of the writ, the court will be divested of jurisdiction or, at a minimum, the effectiveness of that jurisdiction rendered null by a court's inability to pragmatically enforce its judgments and decrees." *Moore v. Rees*, 2007 WL 1035013, *12 (E.D. Ky. 2007).

Under the Act, district courts have power to issue injunctions directed at executive action. *See, e.g.*, *U.S. v. City of Detroit*, 329 F.3d 515, 523-24 (6th Cir. 2003) (en banc). The power to stay administrative action is similar to the power to stay judicial action. *See Scripps-Howard*, *supra*, 316 U.S. at 9-10.

The action over which I seek to protect my jurisdiction and on which I issue this Order—the ability to adjudicate the appropriate remedy for violations found regarding the BPI—involves final agency action. *KindHearts*, *supra*, 2009 WL 2514057, *37 n.18. Allowing defendants to go forward with the designation process would interfere with the properly exercised jurisdiction of this court.

Under the unique facts of the present case, where I have already held that KindHearts was subject to multiple constitutional and statutory violations, my jurisdiction will be frustrated if the administrative process is permitted to proceed before I address what remedies, if any, are appropriate.

I therefore find that "critical and exigent" circumstances exist here to justify invocation of the Act to enjoin the designation process to protect my exercise of jurisdiction on the issue of remedy raised by my August 18 Order.

### C. Equitable Powers

In the alternative, I assert my ability to grant injunctive relief under my equitable powers.

Federal courts are courts in law and equity. "[A] court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in a particular case." *Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir. 1999).

Courts have broad equitable power to fashion appropriate remedies for adjudicated constitutional and statutory violations. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15-16 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."). In determining "how far this remedial power extends[,] it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation" and "the nature of the violation determines the scope of the remedy." *Id.* at 15.

In my August 18 Order, I ruled that KindHearts was entitled to—and denied—a BPI process that conformed with the Fourth and Fifth Amendments and the APA. It is only at this point that I am asked to exercise my equitable powers to preserve the status quo to ensure that I have an opportunity to evaluate the proper remedy, if any, for these adjudicated violations. I therefore enjoin the ongoing designation proceeding based not on a prospective challenge to the threatened designation, but on my equitable powers to construct a remedy for those violations already adjudicated.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants be, and they hereby are temporarily restrained and enjoined

12

from designating KindHearts as an SDGT, and from requiring KindHearts to respond to defendants in the designation process, pending my determination of what remedy shall issue because of the constitutional and statutory violations found in the Order entered August 18, 2009. [Doc. 87].

So ordered.

s/James G. Carr
James G. Carr
Chief Judge
