# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| KINDHEARTS FOR CHARITABLE HUMANITARIAN DEVELOPMENT, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TIMOTHY F. GEITHNER, in his official capacity as the Secretary of the Treasury, ADAM J. SZUBIN, in his official capacity as the Director of the Office of Foreign Assets Control, and ERIC H. HOLDER, in his official capacity as the Attorney General of the United States, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil No. 3:08-cv-2400
Chief Judge James G. Carr

## PLAINTIFF'S SUPPLEMENTAL BRIEF ON REMEDY

BEN WIZNER
(admitted pro hac vice)
ALEXANDER A. ABDO
(admitted pro hac vice)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 519-7860
Fax: (212) 549-2583
bwizner@aclu.org
aabdo@aclu.org

LYNNE BERNABEI
(admitted *pro hac* vice)
ALAN R. KABAT
(admitted pro hac vice)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, DC 20009
Telephone: (202) 745-1942
Fax: (202) 745-2672
bernabei@bernabeipllc.com
kabat@bernabeipllc.com

FRITZ BYERS
(Ohio Bar No. 0002337)
The Spitzer Building, Suite 824
520 Madison Avenue
Toledo, OH 43603
Telephone: (419) 241-8013
Fax: (419) 241-4215
fbyers@cisp.com

DAVID D. COLE
(admitted pro hac vice)
Georgetown University Law Ctr.
600 New Jersey Avenue, N.W.
Washington, DC 20001
Telephone: (202) 662-9078
cole@law.georgetown.edu

CARRIE L. DAVIS
(Ohio Bar No. 0077041)
American Civil Liberties Union of Ohio
  Foundation, Inc.
4506 Chester Avenue
Cleveland, OH 44103
Telephone: (216) 472-2220
Fax: (216) 472-2210
cdavis@acluohio.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

   I.    OFAC's Violations of the Fourth Amendment .................................................4

   II.   OFAC's Violations of the Fifth Amendment ...................................................5

   III.  OFAC's Violation of the Administrative Procedure Act .................................8

ARGUMENT ............................................................................................................... 9

   I.    REMEDY FOR OFAC'S VIOLATIONS OF THE FOURTH AMENDMENT .............9

      A.   OFAC's Failure to Obtain a Warrant Based upon Probable Cause
           Requires the Court to Set Aside OFAC's Unconstitutional BPI. ...................................10

      B.   OFAC Will Retain Ample Legal Authority to Protect Its Interests. ..............................14

   II.   REMEDY FOR OFAC'S VIOLATIONS OF THE FIFTH AMENDMENT ................18

      A.   Remedy for OFAC's Unconstitutionally Vague Freeze Criteria as
           Applied ...........................................................................................................19

      B.   Remedy for OFAC's Failure to Provide Constitutionally Adequate
           Notice or a Meaningful Opportunity to Respond. ........................................................20

         1.   OFAC's failures to provide notice and a meaningful opportunity to
              respond are structural defects not susceptible to harmless-error
              analysis .........................................................................................................21

         2.   OFAC cannot meet its burden of showing that its due-process
              violations were harmless beyond a reasonable doubt. ...............................................23

         3.   OFAC's due-process violations require invalidation of the BPI. .............................24

   III.  REMEDY FOR OFAC'S VIOLATION OF THE APA ................................................25

CONCLUSION ........................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865 (D.C. Cir. 1984) ........................................ 28

*Arizona v. Fulminante*, 499 U.S. 279 (1991)............................................................ 21, 22

*Camara v. Mun. Court of San Francisco*, 387 U.S. 523 (1967).................................................. 10

*Chapman v. California*, 386 U.S. 18 (1967).......................................................... 21, 23

*Cole v. Arkansas*, 333 U.S. 196 (1948)................................................................. 23

*CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548 (6th Cir. 1992) .................. 10

*Custer County Action Ass'n v. Garvey*, 256 F.3d 1024 (10th Cir. 2001) ..................................... 13

*Diebold, Inc. v. Marshall*, 585 F.2d 1327 (6th Cir. 1978) ............................................ 19

*Drope v. Missouri*, 420 U.S. 162 (1975)................................................................. 23

*Fleming v. U.S. Dep't of Agric.*, 713 F.2d 179 (6th Cir. 1983) ..................................... 19

*Gonzalez v. Phillips*, 195 F. Supp. 2d 893 (E.D. Mich. 2001)........................................ 23

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998)...................................... 10

*Kennedy v. United States*, 643 F. Supp. 1072 (E.D.N.Y. 1986) ..................................... 14

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, No. 3:08-CV-2400, 2009 WL 2514057 (N.D. Ohio Aug. 18, 2009) ................................................................ passim

*Lanzetta v. New Jersey*, 306 U.S. 451 (1939).......................................................... 19

*M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634 (9th Cir. 2005) ......................................... 21

*Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247 (11th Cir. 2007) ................................... 24

*Mason Gen. Hosp. v. Sec'y of the Dep't of Health & Human Servs.*, 809 F.2d 1220 (6th Cir. 1987) ................................................................................................ 10

*Ramirez de Arellano v. Weinberger*, 745 F.2d 1500 (D.C. Cir. 1984), *vacated on other grounds*, 471 U.S. 1113 (1985)................................................................................. 13

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ................................................. 13

*Stirone v. United States*, 361 U.S. 212 (1960)...................................................... 22, 23

*Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291 (2007) ........................ 24

*United States v. City of San Francisco*, 310 U.S. 16 (1940) .......................................................... 10

*United States v. Finazzo*, 583 F.2d 837 (6th Cir. 1978), *vacated on other grounds*, 441 U.S. 929 (1979) ...................................................................................................................................... 12

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) ......................................................... 21, 22

*United States v. Salisbury*, 983 F.2d 1369 (6th Cir. 1993) .......................................................... 19

*United States v. Szoka*, 260 F.3d 516 (6th Cir. 2001) .................................................................. 10

*United States v. U.S. District Court*, 407 U.S. 297 (1972) .................................................. passim

*Williams v. Int'l Paper Co.*, 227 F.3d 706 (6th Cir. 2000) .......................................................... 26

*Williams v. Wash. Metro. Area Transit Comm'n*, 415 F.2d 922 (D.C. Cir. 1968) ...................... 13

**Statutes**

18 U.S.C. § 2339A ........................................................................................................................ 14

18 U.S.C. § 2339B ........................................................................................................................ 14

5 U.S.C. § 706 ...................................................................................................................... 8, 10, 19

50 U.S.C. § 1705 ........................................................................................................................... 14

Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. §§ 981-987 ..................................... passim

    18 U.S.C. § 981 ................................................................................................... 12, 15, 16

    18 U.S.C. § 983 ................................................................................................................. 17

Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. §§ 1801-1811 ............................. 12, 15

    50 U.S.C. § 1803 .............................................................................................................. 12

    50 U.S.C. § 1805 .............................................................................................................. 12

Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. 3, 82 Stat. 197 (codified at 18 U.S.C. §§ 2510-2520) .......................................................................... 12, 15, 18

    18 U.S.C. § 2516 .............................................................................................................. 12

    18 U.S.C. § 2518 .............................................................................................................. 12

**Other Authorities**

Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) ................................................. 5, 6

**Rules**

Fed. R. Crim. P. 41 ..................................................................................................................... 12

## INTRODUCTION

On August 18, 2009, this Court held that the Office of Foreign Assets Control ("OFAC") violated the constitutional and statutory rights of Plaintiff KindHearts for Charitable Humanitarian Development, Inc. ("KindHearts") in four ways when it imposed a block pending investigation ("BPI") on KindHearts' assets.  OFAC (1) violated KindHearts' Fourth Amendment rights by failing to obtain a warrant based upon probable cause; (2) violated KindHearts' Fifth Amendment rights by relying on criteria for the freeze that are unconstitutionally vague as applied; (3) violated KindHearts' Fifth Amendment rights by failing to provide KindHearts with adequate notice and a prompt and meaningful opportunity to respond; and (4) arbitrarily and capriciously restricted KindHearts' access to its own funds to pay counsel for its own defense.  *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, No. 3:08-CV-2400, 2009 WL 2514057, at *7-22,*37-46, *51-55 (N.D. Ohio Aug. 18, 2009).

The Court requested further briefing on the appropriate remedies for OFAC's legal violations.  Plaintiffs respectfully maintain that the proper remedy for the Fourth Amendment violation is to invalidate the BPI.  The Court's holding that a BPI cannot be imposed without a warrant and probable cause, coupled with the absence of any statutory authority for a court to grant such a warrant (nor any statutory criteria for the probable-cause requirement), mean that the seizure is *ultra vires* and unlawful.  The appropriate remedy is to "set aside" the illegal agency action.

In a closely analogous Fourth Amendment context, the Supreme Court provided the same remedy.  In *United States v. U.S. District Court*, 407 U.S. 297, 322-24 (1972), the Court invalidated on Fourth Amendment grounds the government's domestic, warrantless-wiretapping program, notwithstanding the government's vigorous protestations that the program was critical

to national security, leaving to Congress the responsibility for fixing the program's flaws.  This Court has similarly and properly left to Congress the task of correcting OFAC's unconstitutional BPI process as applied to domestic corporations.  *KindHearts*, 2009 WL 2514057, at *22.  As the seizure was unlawful and cannot be reinstated until Congress amends the International Emergency Economic Powers Act ("IEEPA") to comply with the Fourth Amendment, the Court should now invalidate the BPI.  As in *U.S. District Court*, the government will remain free to employ other existing authorities to take action against KindHearts, and to freeze KindHearts' assets under IEEPA in the future if Congress so authorizes in a constitutionally adequate manner.

The same remedy—invalidation of the BPI—is required by the Court's finding of Fifth Amendment violations.  The Court held that the seizure violated the Fifth Amendment as applied to KindHearts because OFAC employed unconstitutionally vague criteria.  Until the legal scheme is amended to set forth constitutionally sufficient criteria for BPIs, the BPI must be vacated.

The Court also held that OFAC denied KindHearts constitutionally adequate notice and a meaningful opportunity to respond.  Such a "structural" violation of due process infects the entire proceeding and therefore is not subject to harmless-error analysis.  Moreover, even if such analysis were to be applied, the government cannot meet its heavy burden of proving that its failure to provide notice and a meaningful opportunity to respond was harmless beyond a reasonable doubt.  Therefore, the Court should set aside the unconstitutional agency action.  While this violation could in theory be cured on remand by the provision of constitutionally adequate process, OFAC has made no attempt to do so, and therefore the BPI should be set aside without prejudice to OFAC's proceeding against KindHearts in the future should it cure the

Fourth and Fifth Amendment defects identified above *and* provide KindHearts with constitutionally adequate process.

Any legitimate interest that the government possesses in ensuring that KindHearts' assets are not inappropriately directed toward terrorist activity or organizations can be satisfied by existing laws. Existing "material support" laws make it a crime to provide any support to designated terrorist groups or individuals; KindHearts has never been charged with violating any of those laws. Pending any appeal, KindHearts would be willing to submit monthly reports to OFAC on the use of its assets. In addition, as described below, the government may employ civil asset forfeiture to achieve its interests. If OFAC cannot obtain seizure or forfeiture under a constitutional scheme based upon the evidence it now possesses—more than three years after the initial unconstitutional shuttering of KindHearts—then OFAC truly has no legitimate interest in maintaining the freeze of KindHearts' assets. If, on the other hand, OFAC can satisfy the constitutional civil-forfeiture standards, then its interest in seizure may be satisfied by a suitable alternative to the unconstitutional BPI process.

Finally, the Court should order that OFAC grant KindHearts access to its own funds for all reasonable legal fees incurred in connection with the administrative and judicial proceedings related to the BPI and threatened designation.

## BACKGROUND

On February 19, 2006, OFAC issued an order freezing all of KindHearts' assets pending investigation into whether OFAC should designate KindHearts a "Specially Designated Global Terrorist" ("SDGT"). The BPI froze all of KindHearts' assets and criminalized all transactions with KindHearts, effectively shutting down the charity. OFAC issued the order without a warrant based upon probable cause, without any determination of wrongdoing, without any

judicial oversight or authorization, without specifying or meeting any statutory criteria, and without adequately notifying KindHearts of the basis for the freeze or providing KindHearts a prompt and meaningful post-deprivation opportunity to defend itself.  In the months that followed the BPI, KindHearts attempted to navigate OFAC's ad hoc administrative process to seek adequate notice for, and a meaningful opportunity to contest, the freeze.  OFAC thwarted KindHearts' efforts, denying KindHearts adequate notice of the basis for the freeze, denying KindHearts access to its own business records to prepare a defense until this Court ordered otherwise, denying and then arbitrarily restricting KindHearts' access to its blocked funds to compensate its counsel, and denying KindHearts a prompt and meaningful opportunity to be heard.

On August 18, 2009, this Court issued a decision declaring that in freezing KindHearts' assets pending investigation, OFAC had violated KindHearts' rights under the Fourth Amendment, the Fifth Amendment, and the Administrative Procedure Act.  *KindHearts*, 2009 WL 2514057, at *7-22,*37-46, *51-55.

## I.      OFAC's Violations of the Fourth Amendment.

As a threshold matter, the Court held that OFAC's BPI constituted a "seizure" within the meaning of the Fourth Amendment.  *Id.* at *8.  The Court then explained that, although "the ultimate inquiry is reasonableness," seizures conducted without a warrant based upon probable cause are presumptively unreasonable.  *Id.* at *16.  Turning to the facts of this case, the Court considered whether any exceptions to the warrant requirement might apply, and concluded that none did.  It held that the "special needs" exception was inapplicable for two reasons.  First, "OFAC's blocking power entails no built-in limitation curtailing executive discretion and putting individuals on notice that they are subject to blocking," as is generally required by the "special

needs" exception.  *Id.* at *18.  Second, the Court held that OFAC had failed to establish that the warrant and probable-cause requirements would "categorically be impracticable in light of the government's purpose."  *Id.* at *19.

In addition, the Court addressed and rejected application of the exigent-circumstances exception as a basis for finding the seizure reasonable:

> OFAC's own actions belie its claim that this situation required immediate action, making a prior judicial warrant impracticable.  OFAC conducted a preliminary investigation of presently indeterminate duration.  That investigation led to the blocking order.  Nothing in the record supports any contention that time was of the essence.

*Id.* at *20.  Thus, the Court concluded that OFAC's seizure of KindHearts' assets and operations without a warrant based upon probable cause was unreasonable and violated the Fourth Amendment.[1]  Drawing guidance from *U.S. District Court*, 407 U.S. at 322-24, the Court then properly "left to Congress the responsibility for considering and adopting the appropriate structure" for authorizing seizures consistently with the Fourth Amendment.  *KindHearts*, 2009 WL 2514057, at *22.

## II.      OFAC's Violations of the Fifth Amendment.

The Court found two distinct Fifth Amendment violations.  It ruled that the criteria for a BPI under section 7 of Executive Order 13,224 are unconstitutionally vague as applied to KindHearts.  *See* Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001).  And it held that OFAC failed to provide KindHearts with constitutionally adequate notice of, and a meaningful opportunity to respond to, the freeze.

---

[1] The government has indicated that it intends to argue that the Court failed to address whether the seizure was reasonable; however, the Court's entire analysis was directed toward that question.  Under the Fourth Amendment, seizures are presumptively unreasonable without a warrant supported by probable cause unless they fall within one of several exceptions.  The Court considered and rejected the only two exceptions advanced  by the government.  Thus, the Court need do no more to determine, as it did, that the seizure was unreasonable and unconstitutional under the Fourth Amendment.

With respect to vagueness, the Court held that "[n]either the IEEPA nor E.O. 13224 . . . restrict OFAC's power to block pending investigation . . . by requiring a specific quantum of evidence or level of suspicion that the targeted entity should be designated." *KindHearts*, 2009 WL 2514057, at *30.  The Court noted that were OFAC's authority properly cabined by the Fourth Amendment, and were the probable-cause analysis for a BPI under section 7 of Executive Order 13,224 tied to the SDGT-designation criteria in section 1, then OFAC's authority would not be unfettered and would not be unconstitutionally vague.[2]  *Id.*  But because OFAC did not comply with the Fourth Amendment in freezing KindHearts' assets and operations, the Court concluded that OFAC's BPI authority had been applied to KindHearts in an unconstitutionally vague manner.  *Id.* at *30 n.15.

The Court also held that OFAC violated KindHearts' right to due process by failing to provide adequate notice of the basis for, or a meaningful and prompt opportunity to respond to, the freeze of its assets pending investigation.  Reviewing all the evidence and information that OFAC had provided to KindHearts to date (and OFAC has provided nothing further since), the Court characterized OFAC's productions as "scanty," *id.* at *43, and found that "KindHearts remains largely uninformed about the basis for the government's actions," *id.* at *41.  The Court held, therefore, that OFAC "violated KindHearts' fundamental right to be told on what basis and for what reasons the government deprived it of all access to all its assets and shut down its operations."  *Id.* at *43.

---

[2] The Court thus concluded that adherence to the Fourth Amendment probable-cause standard might cure the absence of any criteria for BPIs in the statute and that, therefore, the statute was not facially unconstitutional. KindHearts respectfully disagrees with this conclusion; the Fourth Amendment probable-cause standard would not "cure" the vagueness, because it leaves entirely unanswered what the government would have to have probable cause *of* in order to impose a BPI.  The Fourth Amendment probable-cause standard lacks meaning absent a substantive definition of a crime or some other illegality.  No such standard exists for the BPI.

The Court also noted that OFAC had failed entirely to afford KindHearts a hearing, much less a prompt one, to respond to the freeze of its assets. *Id.* at *44-45.  At most, the Court stated, OFAC provided KindHearts a one-sentence response to KindHearts' challenge to the BPI, which simply noted that OFAC had received KindHearts' challenge and intended to designate KindHearts an SDGT. *Id.* at *44.  This one-sentence "acknowledgement," the Court held, did not constitute a "due process hearing." *Id.*

Finally, the Court held that OFAC's significant delay in affording what process it did to KindHearts was unconstitutional.  "Promptness is an important aspect of the due process right to be heard," but OFAC "engendered a delay of remarkable duration" in its BPI proceeding. *Id.* OFAC's delay included, among other things: waiting fifteen months after the BPI to make a provisional determination to designate and then providing only a "largely uninformative unclassified record to KindHearts," *id.* at *45; losing KindHearts' 1,369-page submission in response to the BPI, *id.*, and noticing that loss only after the commencement of this litigation; allowing more than fourteen months to pass before declassifying a handful of pages of the administrative record in response to KindHearts' request, *id.*; taking "more than thirty months to give KindHearts redacted records supporting its blocking action," *id.*; and resisting KindHearts' efforts to obtain copies of its own documents to prepare a defense, *id.*

In sum, the Court held that OFAC violated the Fifth Amendment by applying its BPI authority to KindHearts in an unconstitutionally vague manner, by failing to provide KindHearts constitutionally adequate notice of the basis for the BPI, and by failing to provide a prompt or meaningful opportunity to KindHearts to respond to the BPI.

**III.    OFAC's Violation of the Administrative Procedure Act.**

Finally, the Court held that OFAC applied its policy on attorneys' fees to KindHearts in an arbitrary and capricious manner, in violation of the Administrative Procedure Act.  *Id.* at *53-55; *see* 5 U.S.C. § 706.  At the time of oral argument on the parties' cross-motions for summary judgment, OFAC had approved payment of $27,040 for KindHearts' counsel, substantially less than the reasonable sum KindHearts' paid counsel requested.  The Court held that the approval was arbitrary and capricious because

> 1) OFAC has provided no sufficient statement of reasons for authorizing payment of $27,040, rather than the full and still rather modest, amount requested, or some amount in between; 2) OFAC has not addressed the effect on the generation of attorneys' fees of certain special circumstances in this case, such as its delay in responding to communications on behalf of KindHearts, and its general unresponsiveness, in any event, to the requests in those communications, and the complexity of nearly all the manifold issues; and 3) there is a disconnect between the facts underlying the request for access to blocked funds for attorneys' fees and the purposes, as described by OFAC, underlying its June, 2008, attorney fee policy.

*KindHearts*, 2009 WL 2514057, at *53.  Accordingly, the Court concluded, "OFAC's [fees] decision was reached mechanistically, and without individualized consideration of the facts and circumstances of this case."  *Id.* at *55.

Between oral argument and the Court's August 18 decision, OFAC approved an additional payment of $23,002.  *See* Pl.'s Notice of OFAC's Decision on Pl.'s Fee Petitions (Aug. 5, 2009) (dkt. no. 86).  As OFAC's counsel conceded during the Court's October 15, 2009 telephonic hearing, that approval has now exhausted the funds available to KindHearts' counsel under OFAC's policy.  *See also id.*  As a result, KindHearts has been forced to litigate the remedial issues presented in this litigation, and to review over 100,000 documents and the contents of the hard-drives of 16 computers belatedly produced by OFAC in the administrative process, without access to *any* funds to pay reasonable attorneys' fees.

## ARGUMENT

## I. REMEDY FOR OFAC'S VIOLATIONS OF THE FOURTH AMENDMENT

The appropriate remedy for the Fourth Amendment infirmity this Court identified is invalidation of the BPI. The Court held that the BPI violated the Fourth Amendment because it was not imposed pursuant to a judicial warrant supported by probable cause. The statute in place provides no authority for such a warrant and no standard for probable cause; thus, the seizure was *ultra vires*. As the Court properly noted, only Congress can cure these constitutional deficiencies. *KindHearts*, 2009 WL 2514057, at *22. Any legislative fix would have to set forth specific criteria for the probable-cause standard that would govern OFAC's BPI authority and invest an Article III court or a specially constituted court with the power to handle such warrant requests.

As in any case involving unconstitutional agency action, the appropriate remedy is for the Court to set aside OFAC's unconstitutional BPI. Moreover, because the current statutory regime is constitutionally defective, and because only Congress can cure the defect, no post-hoc cure is possible. Neither this Court nor OFAC possesses the requisite authority to cure these constitutional defects.

Granting such relief will not leave the government without appropriate and effective tools to protect its legitimate national-security interests. It may proceed against KindHearts under the federal civil-forfeiture statute. Existing federal laws already prohibit any material support of designated terrorist entities. And KindHearts is willing, during the pendency of any appeal, to report every month to OFAC on its expenditures.

A.    **OFAC's Failure to Obtain a Warrant Based upon Probable Cause Requires the Court to Set Aside OFAC's Unconstitutional BPI.**

Under the APA, this Court "shall . . . hold unlawful and set aside agency action . . . contrary to constitutional right." 5 U.S.C. § 706(2)(B). The Court has determined that OFAC's blocking order, a concededly final agency action, violated KindHearts' Fourth Amendment rights. *KindHearts*, 2009 WL 2514057, at *21-22. Accordingly, the Court must set aside that agency order as required by the APA. *See, e.g.*, *Mason Gen. Hosp. v. Sec'y of the Dep't of Health & Human Servs.*, 809 F.2d 1220, 1229-31 (6th Cir. 1987) (setting aside an unconstitutionally retroactive agency rule pursuant to 5 U.S.C. § 706(2)(B)); *see also Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 540 (1967) (issuing a writ of prohibition against the criminal prosecution of the appellant, based on the state agency's failure to obtain a constitutionally required warrant prior to an administrative inspection).

No additional analysis is necessary: when Congress provides the basis for injunctive relief by statute, courts need not consider the "traditional equitable factors" that guide the exercise of equitable discretion. *United States v. Szoka*, 260 F.3d 516, 523-24 (6th Cir. 2001); *see also United States v. City of San Francisco*, 310 U.S. 16, 30 (1940); *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992). Nevertheless, consideration of those traditional factors would lead to the same result here.

Prior to ordering equitable relief after finding a constitutional violation, courts generally consider two factors: (1) whether the plaintiff would suffer irreparable injury, and (2) whether the plaintiff lacks an adequate remedy at law. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998); *see also Szoka*, 260 F.3d at 532. Both factors favor an injunction invalidating OFAC's unconstitutional BPI.

First, there can be no doubt that absent invalidation of OFAC's BPI, KindHearts will continue to suffer irreparable injury.  Its assets will remain frozen, virtually all transactions with it will remain criminalized, and it will remain effectively shuttered by virtue of an unconstitutional agency order.  In this frozen state, KindHearts will remain unable to fulfill its mission of performing lawful humanitarian activities in support of non-terrorist individuals and groups, activities which OFAC has no legitimate interest in prohibiting.  Second, KindHearts has no adequate remedy at law for OFAC's unconstitutional BPI.  A monetary reward cannot restore its ability to function as a humanitarian organization so long as the BPI remains in effect.  And it is unclear whether KindHearts could even accept a monetary award or whether, instead, such an award would immediately be frozen and unusable pursuant to the BPI.  The traditional equitable factors therefore favor the narrowly tailored and appropriate remedy of setting aside OFAC's unconstitutional agency action.

OFAC's asserted interests in maintaining its unconstitutional BPI do not change this analysis.  As developed below, OFAC has at its disposal several statutory tools, including federal laws criminalizing material support to terrorist groups and a comprehensive asset-forfeiture scheme, to protect its interest in ensuring that no funds go to a designated terrorist group or individual.

OFAC simply has no cognizable interest in maintaining an unconstitutional seizure of a domestic organization's assets pursuant to a statute that is fatally flawed with respect to domestic seizures.  Pursuant to this Court's opinion of August 18, 2009, OFAC may not impose a BPI on the assets of an entity with Fourth Amendment rights without obtaining a warrant based upon probable cause.  *KindHearts*, 2009 WL 2514057, at *19-22.  Compliance with that holding requires congressional action, *id.* at *22, and, in the interim, OFAC lacks any statutory basis to

freeze the assets of KindHearts pending an SDGT designation (except through civil or criminal asset forfeiture). A continued freeze would, therefore, be entirely unauthorized and *ultra vires*.

In status conferences, the Court has raised the of question whether it might have some inherent authority to issue a warrant if it were to find that OFAC in fact had probable cause to impose a BPI. No such authority exists: "[F]ederal courts do not have an inherent power to issue search warrants in the absence of a statute." *United States v. Finazzo*, 583 F.2d 837, 844 (6th Cir. 1978), *vacated on other grounds*, 441 U.S. 929 (1979). Congress has authorized federal courts to issue warrants in federal criminal cases, Fed. R. Crim. P. 41(b)-(e); to authorize criminal investigatory wiretaps, 18 U.S.C. §§ 2516, 2518; to authorize electronic and physical surveillance for foreign-intelligence purposes, 50 U.S.C. §§ 1803-1805; and to review and authorize the civil forfeiture of assets, 18 U.S.C. § 981(b). But Congress has *not* authorized federal courts—or any courts—to issue warrants for BPIs. Absent such authorization from Congress, this Court has no authority to issue a warrant.

Before the Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 U.S.C. §§ 1801-1811, was enacted, for example, the government took the position that it could undertake domestic-security surveillance without court order. In *U.S. District Court*, the Supreme Court rejected that view and invalidated the government's warrantless wiretapping program. 407 U.S. at 318-23. It did not remand for a federal court to entertain an ad-hoc warrant application; rather, it referred the government to the existing statutory authority for domestic-security wiretapping warrants: Title III. Accordingly, the Court was correct in its August 18 decision that it is for Congress, not the Court, to cure the Fourth Amendment infirmities in IEEPA.

Given that only Congress can cure the Fourth Amendment infirmity here, the appropriate remedy is to set aside the BPI, leaving the government, as in *U.S. District Court*, to its existing

alternatives—such as CAFRA or the material-support laws.  *See also Williams v. Wash. Metro. Area Transit Comm'n*, 415 F.2d 922, 938-42 (D.C. Cir. 1968) (setting aside several agency orders and undoing their consequences as to do otherwise "would be to give legal effect to the Commission's invalid order").

Authority for setting aside the BPI can also be found in a related, albeit distinct, line of Fifth Amendment cases in which courts have recognized the propriety of injunctive relief ordering the return of property after unauthorized or *ultra vires* seizures.  In *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1505, 1522-23 (D.C. Cir. 1984), *vacated on other grounds*, 471 U.S. 1113 (1985), for example, the plaintiffs sought injunctive relief to remove U.S. military personnel from their cattle ranch in Honduras, which the military had seized, allegedly without any lawful authority to do so.  In reversing the district court's dismissal of the plaintiffs' complaint, the court noted:

> While courts may properly find that the only relief for an authorized taking of private property is compensation in accordance with the just compensation requirement of the fifth amendment, *injunctive relief is available when the owner proves that government officials lack lawful authority to expropriate his property*. In the latter situation, the landowner is entitled to equitable relief and need not rely on the asserted availability of a damages remedy.  When government officials seize private property without constitutional or statutory authority, the trial court must apply general equitable principles to determine whether injunctive relief is proper.  This involves determining whether monetary relief is adequate and whether a balancing of the equities favors relief.

*Id.* at 1522-23 (emphasis added) (footnotes omitted); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking of private property for a public use, *duly authorized by law*, when a suit for compensation can be brought against the sovereign subsequent to the taking." (emphasis added) (footnote omitted)); *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1042 (10th Cir. 2001) ("Injunctive relief is not available under the Fifth Amendment absent an allegation the purported taking is unauthorized

by law."); *Kennedy v. United States*, 643 F. Supp. 1072, 1077 (E.D.N.Y. 1986) (same).  Here, the Court held that OFAC acted without constitutional authority in freezing KindHearts' assets pending investigation; accordingly, the appropriate remedy is to set aside the unauthorized action and lift the freeze of KindHearts' assets.

### B.    OFAC Will Retain Ample Legal Authority to Protect Its Interests.

By setting aside OFAC's illegal BPI, the Court would not be leaving OFAC powerless to protect its interests.  First, KindHearts is and would continue to be obligated to abide by all federal laws regarding the use of its assets, including those prohibiting the support of terrorism and terrorist organizations.  *See, e.g.*, 18 U.S.C. §§ 2339A-2339B; 50 U.S.C. § 1705.  Notably, more than three years after subjecting KindHearts to the freeze of its assets, the government has not charged KindHearts with violating *any* of these laws.  Thus, there is no basis for believing that KindHearts would expend its resources for any impermissible end.

Moreover, although KindHearts does not believe any reporting is required by law or regulation, KindHearts would be willing to report to OFAC on its expenditures on a monthly basis during the pendency of any appeal by the government.  If OFAC had concerns about any of the expenditures, it could raise them with KindHearts and seek judicial intervention if appropriate.  Such a regime would fully protect the government's interest in ensuring that donations do not support terrorism.  *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. 28 n.15 (Nov. 21, 2008) (dkt. no. 32).

The government also has recourse to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. §§ 981-987.  CAFRA authorizes the government to seize a wide array of assets, including those being used in connection with terrorist crimes.  Although the government has asserted without explanation that CAFRA serves different interests than OFAC's BPI

scheme, CAFRA indisputably provides a route to seizing property being used for terrorist ends. The principal difference between the two schemes is that CAFRA includes substantial safeguards to ensure that the government respects constitutional boundaries imposed by the Fourth and Fifth Amendments—the very boundaries that this Court found transgressed by OFAC's scheme.

Accordingly, CAFRA plays much the same role in this litigation as Title III of the Omnibus Crime Control and Safe Streets Act played in *U.S. District Court*. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. 3, 82 Stat. 197 (codified at 18 U.S.C. §§ 2510-2520).  There, the Supreme Court invalidated the government's domestic, warrantless-wiretapping program, leaving the government with Title III to satisfy its domestic wiretapping interests unless and until Congress provided otherwise, notwithstanding the government's assertion that Title III served different ends.[3]  *See U.S. Dist. Court*, 407 U.S. at 318-23.  This Court's invalidation of OFAC's domestic BPI authority on Fourth Amendment grounds similarly leaves the government with a suitable alternative unless and until Congress provides additional authority.

CAFRA expressly authorizes the Attorney General and, importantly, the Secretary of the Treasury or his or her delegate, to seize all manner of assets under their investigation.  18 U.S.C. § 981(b)(1), (j)(2).  As relevant to OFAC's stated interests here, CAFRA allows the seizure of:

> All assets, foreign or domestic—
>
> > (i) of any individual, entity, or organization engaged in planning or perpetrating any any [sic] Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization;

---

[3] Although Congress ultimately enacted FISA to provide for foreign-intelligence wiretapping, Congress never filled the specific gap created by *U.S. District Court*: it never enacted an alternative to Title III for *domestic*-intelligence wiretapping.

(ii) acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism (as defined in section 2332b(g)(5) against the United States, citizens or residents of the United States, or their property;

(iii) derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property; or

(iv) of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism (as defined in section 2331) against any international organization (as defined in section 209 of the State Department Basic Authorities Act of 1956 (22 U.S.C. 4309(b)) or against any foreign Government. Where the property sought for forfeiture is located beyond the territorial boundaries of the United States, an act in furtherance of such planning or perpetration must have occurred within the jurisdiction of the United States.

*Id.* § 981(a)(1)(G).  In other words, CAFRA permits the Secretary of the Treasury, within which OFAC operates, to seize all assets connected in virtually any way to terrorism.

CAFRA authorizes these seizures pursuant to warrants issued by district judges, and it provides an exception to the warrant requirement for seizures made with probable cause when any exception to the Fourth Amendment's warrant requirement would apply.  *Id.* § 981(b)(2). Thus, CAFRA would accommodate OFAC's need to act quickly in exigent circumstances. CAFRA also accommodates the government's asserted desire to dispose of forfeited assets in a way that furthers its interests.  For example, CAFRA allows the Attorney General or the Secretary of the Treasury to retain forfeited assets or to transfer them to, among others, "any other Federal agency" or "as restoration to any victim of the offense giving rise to the forfeiture." *Id.* § 981(e)(1), (6).

CAFRA's procedural protections respond to the very defects that this Court has identified in OFAC's BPI scheme.  As soon as practicable following, and no later than sixty days after, a civil seizure under CAFRA, the government must send "proper notice" to interested parties.  *Id.*

§ 983(a)(1)(A)(i).  Extensions are available for specified reasons, *id.* § 983(a)(1)(B)-(D), and failure to provide proper notice is remedied by the return of seized property, excluding contraband, "without prejudice to the right of the Government to commence a forfeiture proceeding at a later time," *id.* § 983(a)(1)(F).  The notified party may file a claim with the appropriate official setting forth its interest in the property within the period of time, no less than thirty-five days, set forth in the seizure notice.  *Id.* § 983(a)(2)(A)-(C).  Within ninety days of the filing of such a claim—which period may be extended for good cause or by agreement of the parties—the government must file a complaint for forfeiture of the seized property.  *Id.* § 983(a)(3)(A).  Failure to do so, or alternatively to claim forfeiture in a criminal proceeding, is remedied by return of the property with prejudice.  *Id.* § 983(a)(3)(B).

During the forfeiture proceeding, the government bears the burden of demonstrating by a preponderance of the evidence that the seized property is subject to forfeiture.  *Id.* § 983(c)(1).  The government "may use evidence gathered after the filing of a complaint" to establish forfeiture, *id.* § 983(c)(2), and the owner of non-contraband property may assert the "innocent owner defense," for which the owner bears the burden of establishing by a preponderance of the evidence that the owner "did not know of the conduct giving rise to forfeiture," or "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property," *id.* § 983(d)(1)-(2), (4).  Significantly, CAFRA also provides for limited interim relief for seized-property owners pending the final disposition of a forfeiture proceeding, if they satisfy certain requirements, *id.* § 983(f), and it allows proportionality review by a district judge to determine whether the forfeiture would be "constitutionally excessive," *id.* § 983(g).

In sum, CAFRA is a comprehensive and flexible asset-forfeiture scheme that satisfies OFAC's interest in combating terrorism: by allowing seizures of terrorism-related assets by the Secretary of the Treasury (or his or her delegate); by providing an exception to its warrant requirement for exigent circumstances should they arise; and by allowing the Secretary to dispose of forfeited assets in precisely the same ways that OFAC asserts it must to accomplish its goals here.  As with Title III in *U.S. District Court*, CAFRA is a suitable alternative for the government's asserted interests pending congressional review of the need to provide additional authority to the executive.  This is especially so given the limited reach of the Court's August 18, 2009 opinion to domestic corporations.  *KindHearts*, 2009 WL 2514057, at *11 ("KindHearts' situation differs strikingly and significantly from that of the foreign governments and foreign assets at issue in the TWEA and IEEPA cases on which the government relies.").

For the foregoing reasons, this Court should invalidate the BPI, an unconstitutional agency action, as required by the APA.  Traditional equitable factors and related doctrines of relief, though not necessary to the analysis in light of the APA, also support invalidation.

## II.    REMEDY FOR OFAC'S VIOLATIONS OF THE FIFTH AMENDMENT

This Court found two significant Fifth Amendment violations in OFAC's freeze of KindHearts' assets pending investigation: (1) OFAC applied its BPI authority to KindHearts in an unconstitutionally vague manner, *KindHearts*, 2009 WL 2514057, at *30 n.15; and (2) OFAC failed to provide KindHearts constitutionally adequate notice of, and a meaningful opportunity to respond to, the BPI, *id.* at *41-45.  Both constitutional violations require setting aside the BPI without prejudice to OFAC's proceeding in the future under a constitutional regime and with constitutionally adequate notice and an opportunity to be heard.

A.      **Remedy for OFAC's Unconstitutionally Vague Freeze Criteria as Applied.**

The Court held that OFAC's BPI criteria were unconstitutionally vague as applied to

KindHearts, because "[n]either the IEEPA nor E.O. 13224 . . . restrict OFAC's power to block

pending investigation . . . by requiring a specific quantum of evidence or level of suspicion that

the targeted entity should be designated." *Id.* at *30.  In other words, the Court held that

OFAC's authority to freeze pending investigation, as presently codified, is limited by no

statutory or regulatory criteria and was unconstitutionally vague as applied to KindHearts.

KindHearts thus had no fair warning of the criteria or level of suspicion that OFAC might apply

to freeze its assets and criminalize transactions with it.  *See Fleming v. U.S. Dep't of Agric.*, 713

F.2d 179, 184 (6th Cir. 1983) ("[D]ue process requires that government regulations and statutes

provide adequate warning as to what they command or forbid such that persons of common

intelligence will not have to guess as to their meaning and may act accordingly."); *Lanzetta v.*

*New Jersey*, 306 U.S. 451, 453 (1939) ("It is the statute, not the accusation under it, that

prescribes the rule to govern conduct and warns against transgression.").

The proper remedy for this violation, as with the Fourth Amendment defect identified

above, is for the Court to set aside the BPI.  First, OFAC's unconstitutional application of its BPI

authority is unconstitutional agency action that this Court "shall . . . set aside."  5 U.S.C.

§ 706(2)(B).  Second, it is settled law that enforcement or regulatory actions taken on the basis of

unconstitutionally vague statutory or regulatory criteria must be invalidated.  *See, e.g.*, *Diebold,*

*Inc. v. Marshall*, 585 F.2d 1327, 1338-39 (6th Cir. 1978) (invalidating agency order and fines

based on vague regulation); *United States v. Salisbury*, 983 F.2d 1369, 1380 (6th Cir. 1993)

(invalidating conviction under vague statute); *Lanzetta*, 306 U.S. at 458 (same).  There is no

basis for departing from the recognized remedy here, especially in light of the alternatives to the BPI authority readily available to OFAC.

**B.      Remedy for OFAC's Failure to Provide Constitutionally Adequate Notice or a Meaningful Opportunity to Respond.**

Setting aside the BPI is also the appropriate remedy for OFAC's due-process violations, without prejudice, once again, to OFAC's trying again under a constitutional statutory regime and with constitutionally adequate procedures.  The Court held that "OFAC has failed to provide a meaningful hearing, and to do so with sufficient promptness to moderate or avoid the consequences of delay," and that "[w]hat reply OFAC made to KindHearts' responses and requests . . . did not cure the deficiencies of its earlier notice."  *KindHearts*, 2009 WL 2514057, at \*45.  As a result, to this day, KindHearts remains "largely uninformed about the basis" for OFAC's actions.  *Id.* at \*41.

The Court requested further briefing on whether these errors were harmless beyond a reasonable doubt and, if not, what remedy is appropriate.  *Id.* at \*45.  The violations are in no way harmless.  Indeed, OFAC's failures to provide notice and a meaningful opportunity to be heard are the kinds of structural defects that do not admit of harmless-error review, because they so fundamentally taint the entire process.  Moreover, even if the Court were to apply the harmless-error standard, the flaws in OFAC's BPI process are so prejudicial that OFAC cannot satisfy its burden of proving that the errors were harmless beyond a reasonable doubt.

Since the errors are anything but harmless, they demand a remedy.  The presumptive remedy for a procedural-due-process violation is to set aside the unlawful agency action and to remand for constitutionally adequate procedures—which in this case would require notice of the legal and factual basis of the charges sufficient to afford KindHearts a meaningful opportunity to respond.  Because the Fourth Amendment and vagueness violations cannot be cured by the

agency until Congress amends IEEPA, however, the Court should set aside the BPI without prejudice to OFAC's proceeding in the future should Congress amend the statute and should OFAC provide constitutionally adequate notice and a meaningful opportunity to respond.

> **1.** **OFAC's failures to provide notice and a meaningful opportunity to respond are structural defects not susceptible to harmless-error analysis.**

OFAC's failures to provide constitutionally adequate notice and to provide KindHearts a meaningful opportunity to respond to the BPI are structural defects that permeate the entire proceeding by depriving KindHearts of the ability to respond to what is in fact at issue. Such violations are so fundamental that they defy harmless-error analysis and warrant automatic reversal.

Harmless-error analysis is typically applied to trial-type errors, where courts are able to assess the effect of the errors on the outcome of the hearing or trial. But where a constitutional error permeates the entire process of a trial or hearing, it is deemed structural and requires reversal without regard to harm. *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991); *see, e.g.*, *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 636, 646-48 (9th Cir. 2005) (Alarcón, J.) (applying structural-error doctrine to a defective administrative hearing).[4] Unlike ordinary trial errors, "structural defects in the constitution of the trial mechanism . . . defy analysis by 'harmless-error' standards." *Fulminante*, 499 U.S. at 309; *see also Chapman v. California*, 386 U.S. 18, 23 (1967). Their "'consequences . . . are necessarily unquantifiable and indeterminate,'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)), ensuring "difficultly [in] assessing the effect of the error," *id.* at 149 n.4, and thus requiring automatic reversal.

---

[4] Judge Alarcón authored the opinion for the court in *M.L.* but was the sole member of the panel to apply the structural-error doctrine. 394 F.3d at 636.

OFAC's failure here to provide notice or a meaningful opportunity to respond is precisely the kind of error that "pervade[d] the entire trial." *Id.* at 150. Had OFAC provided constitutionally adequate notice or a meaningful opportunity to respond, KindHearts would have had a prompt opportunity to challenge the actual bases for OFAC's BPI. "Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." *Id.* Unlike, for example, the improper admission of evidence at trial, the failure to provide notice or a meaningful opportunity to respond "affect[s] the framework within which the trial proceeds." *Fulminante*, 499 U.S. at 310. Assessing the impact of improperly admitted evidence is often routine; assessing the harm that resulted from the fundamental due-process violations here would be a guessing game. Indeed, the game would be particularly difficult, if not impossible, to play, as OFAC *still* refuses to provide constitutionally adequate notice to KindHearts. Thus, there is no way even to approximate a harmless-error analysis for the lack of notice, as KindHearts still does not know the basic facts of the "alternative universe."

In short, OFAC's failure to provide notice or a prompt and meaningful opportunity to respond so fundamentally infected the BPI proceedings that consequent harm cannot be measured. Conducting a hearing without adequate notice or a chance for the accused to respond is akin to holding a criminal trial without an indictment, or a civil trial without a complaint, while simultaneously refusing to let the defendant participate in the proceeding.[5] Such violations demand reversal. In *Stirone v. United States*, 361 U.S. 212, 215-18 (1960), for

---

[5] Indeed, failure to provide adequate notice in an informal administrative proceeding even more fundamentally pervades the process than the failure to provide an adequate indictment or complaint in a typical trial proceeding. In an informal administrative proceeding, the sum total of all notice provided to the affected party prior to its response is that which the agency provides before it makes its decision. In a typical trial proceeding, however, the sum total of notice provided prior to the defendant's response includes not only the indictment or the complaint, but the actual evidence presented at trial during the government's or plaintiff's case. In KindHearts' case, OFAC essentially failed to provide adequate notice either in the complaint (*i.e.*, the blocking order) or at the trial (*i.e.*, the subsequent proceeding), and then denied KindHearts a meaningful opportunity to present a defense.

example, the Supreme Court held that a failure to provide adequate notice of what was at issue in

a criminal trial violated the Fifth Amendment right to be tried on an indictment.  Likewise, in

*Cole v. Arkansas*, 333 U.S. 196, 201 (1948), the Court held that failure to provide notice violated

the Sixth Amendment right to be informed of the nature and cause of the charges.  In both cases,

the Supreme Court reversed the convictions, noting that the errors fundamentally compromised

the fairness of the proceedings.  In *Stirone*, the Court reasoned that the failure to provide notice

"destroyed the defendant's substantial right to be tried only on charges presented in an

indictment returned by a grand jury," and concluded that "[d]eprivation of such a basic right is

far too serious to be treated as nothing more than a variance and then dismissed as harmless

error."  361 U.S. at 217.  Similarly, in *Drope v. Missouri*, 420 U.S. 162, 171-72, 182-83 (1975),

the Supreme Court held that effectively denying a defendant the right to be present at trial, by

subjecting him to trial despite mental incapacity, violated due process and required reversal.  *See*

*also Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 902 (E.D. Mich. 2001) ("In addition, a violation

of the right to be present at one's own trial is a structural defect that is yet another separate basis

for granting relief.").

Accordingly, OFAC's procedural-due-process errors were so fundamental that they are

not susceptible to harmless-error analysis.

### 2.  OFAC cannot meet its burden of showing that its due-process violations were harmless beyond a reasonable doubt.

Even were this Court to determine that harmless-error analysis is appropriate, the result

would be the same.  The purpose of the harmless-error doctrine is to avoid "setting aside

convictions for small errors or defects that have little, if any, likelihood of having changed the

result of the trial."  *Chapman*, 386 U.S. at 22.  Under the doctrine, this Court must vacate the BPI

unless OFAC carries its burden of establishing that the failure to provide adequate notice and a

meaningful opportunity to respond was "harmless beyond a reasonable doubt." *Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291, 303 (2007).

OFAC cannot possibly satisfy that demanding standard here: had OFAC provided KindHearts adequate notice and a meaningful opportunity to defend itself, KindHearts would have responded to the actual bases for the freeze, not to vague and general assertions. OFAC may carry its burden, then, only by demonstrating beyond a reasonable doubt that it would have upheld its decision to block KindHearts pending investigation irrespective of any argument KindHearts might have made or any facts it might have adduced *after* being afforded constitutionally adequate notice of the charges. Given that neither OFAC nor KindHearts can possibly anticipate what those arguments or facts might be until, at the very least, OFAC provides adequate notice, OFAC cannot demonstrate that those arguments or facts would not potentially affect its BPI review.[6]

The Court should therefore invalidate OFAC's BPI even under harmless-error review.

### 3.    OFAC's due-process violations require invalidation of the BPI.

In requesting further briefing on the appropriate remedy for OFAC's due-process violations, the Court asked whether the violations "can be remedied." *KindHearts*, 2009 WL 2514057, at *45. In light of the Court's other constitutional holdings, however, OFAC may "remedy" its due-process violations only in a *subsequent* BPI process under a reformed statute. There is no basis in law for allowing the unconstitutional BPI to persist while OFAC provides additional process. The unconstitutional BPI should be set aside as required by the APA. Thereafter, OFAC may attempt to re-freeze KindHearts' assets pursuant to a constitutional

---

[6] Any claim to the contrary would essentially be a claim that OFAC would ignore KindHearts' proffer. Such disregard would be arbitrary and capricious. *See Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1260 (11th Cir. 2007) ("[T]he Agency acted arbitrarily and capriciously by . . . ignoring evidence which supported the [plaintiffs'] claims.").

statute, and it would then be required to provide constitutionally adequate process.  In other words, the proper remedy here is invalidation of the BPI without prejudice to OFAC's ability to seek seizure of KindHearts' assets under a constitutional seizure or forfeiture scheme.

OFAC's own actions and statements make clear, moreover, that allowing OFAC to attempt to "cure" the unconstitutional BPI process would be futile.  Even though "KindHearts remains largely uninformed about the basis for the government's actions," *id.* at *41, OFAC has yet to provide any further notice to KindHearts.  On the contrary, OFAC has evidenced its clear intent *not* to provide constitutionally adequate process to KindHearts with respect to the BPI, insisting that it cannot provide additional notice of the bases for its actions.  The Court should not allow OFAC to sidestep its constitutional obligations in this manner.  It should, instead, invalidate the BPI.[7]

## III.    REMEDY FOR OFAC'S VIOLATION OF THE APA

The Court held that OFAC's application of its fee policy to KindHearts' blocked funds was arbitrary and capricious for three reasons: (1) OFAC provided no sufficient statement of reasons for authorizing payment of the modest amount authorized rather than the full, still modest, amount requested; (2) OFAC failed to address the effect on the generation of attorneys' fees of the special circumstances in this case, such as OFAC's primary responsibility for the delay in the administrative proceedings, OFAC's general unresponsiveness, and the complexity of the issues involved; and (3) OFAC's stated interests in limiting the licensing of blocked funds for compensation of counsel bore little connection to the facts of this case.  *KindHearts*, 2009

---

[7] If the Court, nonetheless, allows OFAC to maintain its unconstitutional freeze of KindHearts' assets, it should order OFAC to provide KindHearts with a constitutionally adequate process with respect to the BPI and a meaningful opportunity to respond, all subject to judicial review *prior* to OFAC's continuation of the designation proceedings. To be constitutionally adequate, notice would have to inform KindHearts of the specific acts it allegedly committed that warrant a freeze and of the specific evidence that supports those charges.  Only such specificity, currently lacking, would allow KindHearts to respond in a meaningful fashion to OFAC's charges.

WL 2514057, at *53.  To remedy OFAC's arbitrary and capricious application of its fee policy, the Court should remand to OFAC and order it to license the payment from blocked funds of all reasonably incurred legal fees in connection with KindHearts' administrative and judicial challenges to OFAC's BPI and threatened designation.  This relief is warranted for several interrelated reasons.

First, OFAC has taken the position that there are no more fees available to KindHearts under the arbitrarily low cap that OFAC's policy imposes.  *See* Decl. of Alan Kabat ¶¶ 2-9, dated Oct. 30, 2009.  This fact alone renders mere remand futile, as OFAC has made clear that it will not license the use of any more blocked funds for attorneys' fees.  *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 n.5 (6th Cir. 2000) (affording additional relief where "remand would be futile").  Moreover, OFAC's position misunderstands the necessary consequences of the Court's decision.  In both the administrative and district-court proceedings, OFAC has, through its dilatory, unconstitutional, and otherwise illegal actions, forced KindHearts to deploy the already insufficient resources available to it under OFAC's revised fee policy to issues largely unrelated to the merits of OFAC's contentions.  *See, e.g.*, *KindHearts*, 2009 WL 2514057, at *54 ("Not compensating counsel for work done as a result of OFAC-caused delay is an abuse of OFAC's discretion.").  As a result, KindHearts currently has no remaining funds under OFAC's policy to continue litigating the significant constitutional and statutory questions now before this Court.  Nor does it have access to any funds to devote to reviewing the voluminous material—more than 100,000 scanned documents, the contents of 16 computer hard-drives, and the transcripts and exhibits of two protracted criminal trials involving the Holy Land Foundation—that it must in order to prepare its defense to the BPI or to designation.

KindHearts' burden in this regard has been greatly exacerbated by OFAC's constitutional violations.  Because OFAC has failed to provide constitutionally adequate notice of the bases for the BPI (and the designation[8]), KindHearts' document review is necessarily limited and will likely need to be repeated, at least in part, if OFAC ever provides adequate notice.  Because KindHearts literally does not know what it is looking for, once OFAC provides it with adequate notice it will have to re-review the voluminous material in light of the newly disclosed charges and evidence.  Finally, KindHearts has no funds to allocate to defending against further BPI proceedings should this Court order such proceedings as a remedy for the Fourth and Fifth Amendment violations.

Second, this Court has already determined that OFAC's interests in preserving KindHearts' blocked funds are "disconnect[ed]" from the facts of this case.  *Id.* at *53. Preserving blocked funds to satisfy legal judgments against KindHearts makes sense only if "there is some likelihood of claims being asserted, verdicts being entered and judgments being enforced."  *Id.* at *54.  OFAC failed to consider "such likelihood, or lack thereof," *id.*, but that likelihood is virtually nonexistent, in any event, forty-four months after OFAC's freeze with no criminal charges brought.  OFAC's interest in preserving the funds for use in negotiations is even more far fetched: "Preserving the funds for use by the President as a negotiating tool does not seem at all likely in this case.  These funds belong to an American corporation, not a foreign government, or even a foreign private entity with influence over relations with the United States."  *Id.*  Finally, the Court wholly rejected OFAC's claim that restricting access to the blocked funds by KindHearts' counsel protects U.S. interests: "paying counsel for putting OFAC

---

[8] Although the Court considered only whether the notice provided to KindHearts adequately notified it of the bases for the BPI, the holding applies equally to the notice received of OFAC's threatened designation, as the Court considered the entire record to determine whether KindHearts had notice of the charges against it.

to the test of the Constitution and the laws of the United States hardly harms United States interests.  Indeed, it furthers them, regardless of the outcome of the test."  *Id.* at *55.

Third, the Court has noted the complexity of the constitutional, statutory, and factual questions raised by KindHearts' case.  *Id.* at *54.  The legal challenges so far have required well over 400 pages of briefing by the parties and over 10 hours of argument before the Court.  Further legal proceedings, including any appeal, will impose significant additional demands upon KindHearts' counsel.  The factual review has also been onerous and complex by virtue of the volume of material and the fact that KindHearts still does not have adequate notice of the charges against it.  Notwithstanding this complexity, OFAC has stated that KindHearts has exhausted the funds available to it to compensate counsel.[9]

Finally, as a corporation, KindHearts may appear before the Court only through counsel.  *Id.*  Therefore, "[d]enying a corporation access to counsel is tantamount to depriving it of the right to defend itself."  *Id.* (citing *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984)).  OFAC's arbitrary fee policy has, for this reason, required KindHearts to rely heavily upon pro bono assistance.

---

[9] It is worth noting, in this regard, and in response to this Court's queries regarding proportionality, that OFAC has not alleged that even a single penny of KindHearts' multi-million-dollar annual budgets was ever given to a designated entity.  Nor has OFAC alleged that any of the currently frozen funds were destined for unlawful use or somehow obtained unlawfully.  KindHearts maintains that all of its donations were obtained lawfully and that all of its past expenditures were dedicated to wholly lawful purposes and intends to show that it employed substantial safeguards to ensure that it never provided funds or material support to terrorist activities or to any designated terrorist entities or individuals.  Even if one were to accept, solely for the purposes of argument, OFAC's allegations regarding questionable transactions, however, the allegations implicate only a miniscule portion of KindHearts' budget, belying any suggestion that KindHearts was designed to funnel support to terrorists.  The only specific instances of financial transactions that OFAC cites are transfers to the Sanabil Association for Relief and Development, the Islamic American Relief Association, and the Al-Razi Hospital, entities that were *not* designated at the time of the alleged transfers.  IEEPA does not prohibit transfers to non-designated entities, and therefore OFAC has failed to point to any misappropriated funds.  But even if one were to assume that these transfers to non-designated entities were improper, they reflect less than two percent of KindHearts' total budget—and those are the *only* specific expenditures that OFAC even questions.  Decl. of Amanda Shanor ¶ 11, dated Oct. 30, 2009.  Thus, from the standpoint of proportionality, OFAC has not questioned more than 98 percent of KindHearts' expenditures, yet has frozen over a million dollars of unused funds based on allegations that KindHearts made less than a handful of transfers to three lawful, non-designated recipients.  (It has not even alleged, moreover, that any of these funds went to further any terrorist activity of any kind.)

In sum, OFAC has no legitimate interest in barring KindHearts' access to the modest level of compensation that its counsel have sought and will continue to seek; OFAC has failed to account for the circumstances of this case and continues to maintain that KindHearts has exhausted its available funds; and OFAC's own unconstitutional and otherwise unlawful actions have exacerbated the harm caused by its arbitrary fees decisions.  For these reasons, the Court should order OFAC to license the release of blocked funds so that KindHearts may compensate its counsel for all reasonably incurred legal fees.

## CONCLUSION

For the foregoing reasons, the Court should invalidate OFAC's unconstitutional BPI and order OFAC to license the use of KindHearts' blocked funds to compensate KindHearts' counsel for all reasonably incurred legal fees.

October 30, 2009                    Respectfully submitted,


  /s/ Ben Wizner
BEN WIZNER
(admitted pro hac vice)
  /s/ Alexander A. Abdo
ALEXANDER A. ABDO
(admitted pro hac vice)
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 519-7860
Fax: (212) 549-2583
bwizner@aclu.org
aabdo@aclu.org


  /s/ Fritz Byers
FRITZ BYERS
(Ohio Bar No. 0002337)
The Spitzer Building, Suite 824
520 Madison Avenue
Toledo, OH 43603
Telephone: (419) 241-8013
Fax: (419) 241-4215
fbyers@cisp.com


DAVID D. COLE
(admitted pro hac vice)
Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, DC 20001
Telephone: (202) 662-9078
cole@law.georgetown.edu


LYNNE BERNABEI
(admitted pro hac vice)

ALAN R. KABAT
(admitted pro hac vice)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, DC 20009
Telephone: (202) 745-1942
Fax: (202) 745-2672
bernabei@bernabeipllc.com
kabat@bernabeipllc.com

CARRIE L. DAVIS
(Ohio Bar No. 0077041)
American Civil Liberties Union of Ohio
    Foundation, Inc.
4506 Chester Avenue
Cleveland, OH 44103
Telephone: (216) 472-2220
Fax: (216) 472-2210
cdavis@acluohio.org

*Counsel for KindHearts for Charitable
Humanitarian Development, Inc.*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Plaintiff's Supplemental Brief on

Remedy and supporting declarations were filed electronically this 30th day of October 2009.

Notice of this filing will be sent by operation of this Court's electronic filing system to all

parties.


                             <u> /s/ Ben Wizner           </u>
                             Ben Wizner
                             (admitted *pro hac vice*)
                             American Civil Liberties Union
                               Foundation
                             125 Broad Street, 18th Floor
                             New York, NY 10004
                             Telephone: (212) 519-7860
                             Fax: (212) 549-2654
                             bwizner@aclu.org